The next case on our call this morning is Agenda Number 17, Case Number 108184, George H. Ryan Sr. v. Board of Trustees of the General Assembly Retirement System. Ms. Hughes, you may proceed. Thank you, Your Honors. My name is Jan Hughes, Assistant Attorney General. I represent the Board of Trustees of the General Assembly Retirement Fund. Your Honors, this case comes to you on administrative review of the Board's decision finding that former Governor Ryan is entitled to none of his pension benefits. The Pension Board made that conclusion based on the plain language of Section 2156 of the Pension Code. And that reads that none of the benefits shall be paid to any person convicted of any felony relating to arising out of or in connection with his service as a member. And member is the key word. The Board concluded that this language was plain and that it did not need to look any further to determine that this would be a full, that he would lose all of his benefits. The appellate court, on the other hand, erred because it looked to the meaning of the word member. It discovered that member under the statute refers to service in the period of such office. And member in the system refers to members of the General Assembly, the Governor, Lieutenant Governor, Secretary of State, Comptroller, Treasurer, and Attorney General. And Governor Ryan agreed that he should lose his pension relating to his service as Governor and Secretary of State because he held those offices when he committed his crimes. He did not agree that he should lose his pension relating to Lieutenant Governor and when he served in the General Assembly. So the appellate court decided that the word member in Section 156 was ambiguous. And because of that, it looked to the definition of service, or the word member. And the statute says in the definition of member, it added for the period of service in such office. But this phrase does not create divisible offices for periods of the forfeiture provision. We know that based on the definition of service in Section 2-110, that this merely tells who is eligible to serve. Section 2-110 simply says that a person becomes a member when the person first becomes a member and then service ends on the period under consideration, excluding all periods of non-membership. So when a person does not serve in a public office, they are not a member. But all of the other periods, beginning at the first elected state office and the end, they are a member throughout that entire period. It is only periods if, for example, the person does not run for an office again or is not re-elected, they would not be a member. If they were re-elected later, membership would continue. Ms. Hughes, does our resolution of this case hinge on our construction of the nexus and the connection required? Well, certainly the board looked to nexus because under this court's precedent it had to. And the board discovered that nexus was established because the crimes were committed while he was a member. And because the nexus was established, the question then became the extent of the forfeiture. And the board correctly found that all of the benefits would be forfeited because of the language of the statute that hinges on the word member, service as a member of the pension system. So the nexus was established. Ms. Hughes, in Taddeo this court stated, quote, pension statutes are to be construed liberally in favor of the petitioner's rights. You'd agree that that's the statement in Taddeo, right? This court has also held that there are bounds to that liberal construction. Well, let me ask you this. Here, when you plug the definition of member into the felony forfeiture provision, the provision would state, none of the benefits herein provided shall be paid to any person who is convicted of any felony relating to or arising out of his or her service as governor, et cetera, for the period of service in such office. You just explained to us your interpretation of what for the period of service in such office means. And maybe the legislature never intended that the for the period of service in such office portion of the definition be applied in the felony forfeiture provision. But that's the definition they wrote, isn't it? Well, we have to look at the legislative intent. And there is nothing in that phrase, as the board correctly found, that creates divisible offices for purposes of the forfeiture provision. Again, I think if we are going to take the word member from section 156 and look up the definition of member, we also should look up the definition of service. And service is only talking about who's eligible. And so for the period of service So your position is, yeah, the forfeiture provision uses the defined term member. Correct. But service is also defined. So if it's fair to look at the term member and look at the definition, it's also fair to look at the definition of service. I think it is fair. If you're going to look at the definition of one, then why not look at the definition of the other? And certainly I think even in a plain language study, it would be appropriate if the statute defines terms to look at the definition of those terms. So if we look at the definition of service, there's absolutely nothing in there that talks about creating divisions of these offices. All it talks about is when a member is eligible. And doesn't that make sense? That when we're thinking of who is a member, we're thinking of eligibility. We're not thinking of anything else. And the appellate court in Mr. Ryan read this far too broadly. They created limitations where none exist under the plain language and certainly none exist in the legislative intent that could be implied from the statute. So we believe that it would be only fair to continue to look at the definition of service if we are looking at the definition of member. The court, the appellate court also erred in finding that these offices are, quote, easily divisible. But there's nothing to indicate that the legislature intended to divide these offices. Surely if it wanted to do so, it knew how to write a statute that would provide so. And all we have to do is look at the employee's municipal retirement fund. And under that fund, the statute talks about that each municipality is a separate division. And this court recognized that in the Taddeo case. It is treated as an independent unit within the fund. Here, on the other hand, the system was created as one entity for the benefit of the members of the system. Its funds are separate from all other funds. Also in the IMRF, each municipality makes separate contributions to the fund for their employees. Here, on the other hand, the state makes all of the contributions, not each of the offices. I suppose if each office, for example, if the Attorney General's office had to make her contributions, or if the Secretary of State had to make, that office had to make contributions, then it would be more likely. That is not the case. The statute was not written that way. The statute says that the state, that one entity, makes all the contributions. The state also pays all of the expenses. Also under the IMRF, the liabilities and reserves of each municipality are kept separate. Here, in contrast, the assets of the system are invested as one fund. And it says that no person or entity shall have a right in any specific part other than an undivided interest in the whole. So in other words, under this particular statute, there are no divisions. And there was absolutely no basis to imply divisions under the meaning of the phrase, for the period of service in such office. I'm sorry, Your Honor, I have trouble hearing you. Your Honor, there was no significance to that. He had not vested in that fund. I believe vesting is eight years, and he only had approximately six, I think, as you mentioned. When he joined the General Assembly retirement system, he purchased those credits from his county service, and they became part of his pension from this fund. So there is no significance to that fact. I'm puzzled by the phrase, for the period of service in such office. It is found with the definition of the word member. Does that mean the period of service that he actually served in the office? It appears to be what it says. And I'm sorry if you've been over this. No, no, I would prefer going over it again. I have to. I'm looking at and trying to read the language. I think I have it accurately. The phrase appears as... expresses a legislative intent to narrow the scope of the term member and to limit the forfeiture provision to the period in service in such office, as is directly related to a felony conviction, and then points to the phrase, for the period of service in such office. It's found in the definition of member. And your question was? My question is, doesn't that seem to say that what we're dealing with is the periods that the plaintiff actually served in the office, rather than a continued period of service? Your Honor, we have looked at the meaning of service, and the meaning of service under Section 2-110 contemplates that someone can be a member, even though they may leave office early. So again, under the meaning of service, it is still talking about eligibility. It is not talking about creating separate offices. It just defines the eligibility, then? Well, frankly, I'm not sure why the phrase was added. Well, I mean, that becomes a problem, because it has to mean something. Well, it does mean something, and it's under... The definition of member would just describe who is eligible for membership. And I think that it's a reasonable interpretation to suggest that this phrase is simply referring to who is a member, not creating separate divisions for purposes of another section that is talking about a felony forfeiture provision. And so that's, I think, all that it means. I, in my reply brief, looked at some of the history of this provision to determine, you know, is that correct? And we believe that it is correct. And when the constitutional officers, they used to be in the state employee's retirement system. When they were moved into the General Assembly retirement system, there was, they had their own paragraph. The prior paragraph talked only about the General Assembly. And the last sentence of that paragraph refers to eligibility of membership. And so I think based on that, it is also fair to assume that for the period of service in such office also refers only to membership. It doesn't refer to, again, creating separate offices to protect someone who is a member. It refers to someone who serves in various offices and commits a felony only in one. Ms. Hughes, following up on Chief Justice Fitzgerald's question, isn't the latter more specific, such office, in statutory construction? How would you, how would we provide any kind of statutory construction when one is more specific than in the General Assembly, one just says member? In terms of which is more specific? Yes. I mean, don't we file a statutory construction? I don't know that that applies. I mean, certainly in Section 2156 of the Felony Forfeiture Provision, the word member is general and just describes who belongs to the system. And that in the definition of member is consistent with that. So I don't know that we have a situation where there's a general or a more specific. I mean, I think reading them together, it is just that when someone is a member of the system, they would lose all of their pension benefits due to a felony forfeiture conviction relating to member of the system. But the words such office then are irrelevant? No. I mean, that provision, you know, doesn't contain any limitation, as the board found. And again, if the legislature intended to create these separate offices, as the appellate court found, and that they were easily divisible, the legislature nowhere in the statute said that. And nothing can be implied from that. So you are arguing that the statute is ambiguous? Is it ambiguous? Yes. No, I think it's unambiguous. I think it's clear that there is no limitation whatsoever in the Felony Forfeiture Provision. And an unambiguous statute, we can still look at definitions in the statute, and nothing in those definitions of member or service would create any limitation whatsoever on the Felony Forfeiture Provision. But even if we assumed that it was ambiguous, we can look at the policies behind this. And the policies of the Felony Forfeiture Provision are to deter others and to discourage official malfeasance. And giving Governor Ryan even part of his pension does nothing to promote those policies. You had indicated earlier, I think, that member had to do with the time of service in office, that if someone was serving in an elected office, he or she was a member, no longer in office, no longer a member, re-elected, then becomes a member. Is that a fair statement? Yes. In the event, and we don't have this situation, but would you also argue in that situation, if someone had served a number of years in office, started drawing a retirement, and then retired, would that be considered a member? Yes. Okay, that is your argument. That is the case. And in fact, that would be considered a member. That was the argument before the board, and the board rejected that. And I think that it is consistent with each time someone is elected to office, when they're a member of the system, that they reaffirm that commitment to honorable service. And because the felony forfeiture is tied to membership in the system, then that person would lose all of the benefits, no matter if there was a break in service. And that's consistent. It promotes the policies. Even though it was a different office? I'm sorry? Even though it's a different office? Well, as long as it's an office covered by this pension system, yes. If someone were a member of the General Assembly, and left office, and five years later decided to run for Secretary of State, and won that office, and committed the felony during the Secretary of State, because of the way service is defined, and eligibility is defined, and membership is defined, that membership is seen as a whole. And so none of the benefits would be paid. Thank you. Your time is up. Thank you. Thank you very much. Mr. Chief Justice, and may it please the Court, my name is Jim Thompson, and I represent the plaintiff, Apolli, in this case, Governor George Ryan. Before I begin my argument, let me refer to two questions that were asked of the Assistant Attorney General at the conclusion of her argument. First, she, in response to a question, said that, even if you assume the statute is ambiguous, then it is ambiguous. Then you would look to the public policy of the statute to see whether forfeiture of all the pension served the purpose of the public policy. With all due respect, that's not what this Court has held in the past. As recently as four years ago, in the Taddeo case, the Court, quoting prior decisions, again made it clear that pension statutes are to be construed liberally in favor of the pensioner. You've said that in Taddeo, you've said that in Shields, and you've said that in other cases. So, if this statute is ambiguous, then this Court should adopt the construction which favors Governor Ryan. Counsel, on that point, a large part of the discussion with opposing counsel was based on statutory construction, use of the word member, the term member. The interplay of the two statutes. Section 2156 plainly states, if a person is convicted of a felony relating to arising from his service as Governor or Secretary of State, the person shall receive none of the benefits provided for by the General Assembly retirement system. Not only some of the benefits, but none of the benefits. I guess the word none is clear. None means none. It's not divisible into smaller parts. So, the counterpart of the question I had for opposing counsel on the interplay of the statute and the wording is, what is your position on the clear meaning of none in that statute? My position is twofold. If our legislature meant what counsel claims it meant, and what the Pennsylvania Supreme Court said in the Shiasmo case, our legislature would have written the statute differently. You cannot take the word none in isolation. The word none, like the word service, like the word member, has to be read in the context of the entire statute. And so the answer would still be the same. If you commit a crime, or if you're convicted of a crime during your service in a particular office, you get none of the benefits that would ordinarily flow from the pension for that office. That does not mean that you get none of the benefits if you're not convicted of a crime when you're serving. And that would be the interplay that we talked about with the definition of member. In response to that, opposing counsel indicated that we have to look at the definition of service as well, and her analysis of the definition of service says that that portion of it relates to eligibility. Well, you know, I looked at that argument in her brief as late as this morning, and with all respect, I came to the conclusion that it doesn't make any difference. Because the question at the end, as the appellate court found, is if you're elected to divisible offices, as Governor Ryan was, and if you do nothing wrong in some of those offices, and if you've made your pension contribution to some of those offices, you're entitled to your pension. And there is nothing in that whole technical section of the statute defining service that compels a contrary conclusion. Let's put to one side what this case is not. This case is not Wells. Governor Ryan was not an employee of the state of Illinois, as much as the Attorney General would like to make it appear. Governor Ryan, like the members of this court, was an officer of the state of Illinois, elected to separately defined constitutional offices, with separately defined duties, elected by the people, not appointed by somebody as an employee. Those offices had a beginning and an end, specified by the Constitution, a term. And each time he was elected, whether as a member of the General Assembly, or as Lieutenant Governor of the state of Illinois, or as Secretary of State of the state of Illinois, or as Governor of the state of Illinois, he became a member anew of the General Assembly Pension Fund. And he is entitled to the pension for the service in the office which had nothing to do with it. Governor, is our, who our employer is based on who pays us, or what office we hold? I'm just thinking, if you go in to apply for a mortgage and they say employer, Yes. I mean, we're going to say state of Illinois, aren't we? Yes. But not as an employee of the state of Illinois. This is not Wells, where a man was employed in one position, and through a long career, was promoted within that position, and had to forfeit all of his pension benefits because he committed a crime at the end. This is akin to Taddeo, where the man held two separate offices and committed no malfeasance in one of them. And this court, just four years ago, found that he was entitled to the pension for that because they were separate offices. Does the General Assembly retirement system have separate funds or accounts for the various offices that are covered by the system? They do not. But Governor Ryan's contributions and Governor Ryan's pension can be easily divided by the retirement fund. There is no issue as to that. And so the argument of the Attorney General that because the municipal retirement fund contains these neat accounting sections, that that is an intention of the legislature to give separate pension benefits easily. And the commingling of the fund in the General Assembly retirement fund means something opposite. It just doesn't work. As the appellate court, a very credible and distinguished panel of the appellate court first district found, this is a case of first impression. This is the first time you have confronted a situation in which a claimant, Governor Ryan here, has held separate and distinct constitutional offices. In Taddeo, for example, two concurrent municipal offices. In Wells, one stretch of employment. But the fact that this is a case of first impression does not mean that Governor Ryan is not entitled to his partial pension because there is literally no difference in the principles which you applied to the Taddeo case and the principles that the appellate court applied in this case. If I may, I'd like to paraphrase a portion of the dissent written by Justice Freeman and concurred in by Justice Kilbride in the Coveney case because I think it makes an important point here. In Coveney, I'm sorry, in Devity, Justice Freeman said, and I'm going to substitute the words attorney general for the words the court. I understand the desire of the attorney general to punish Governor Ryan by depriving him of his pension benefits. I sympathize with the attorney general. However, the attorney general must interpret and apply the statute in the manner in which it is written. The attorney general must not rewrite the statute to make it consistent with the attorney general's idea of orderliness and public policy. That fits this case, I believe. No one standing here defends the conduct of Governor Ryan in his office as Secretary of State and as Governor. For that, he was indicted and convicted and incarcerated and he remains in the penitentiary at Terre Haute today and unless the President of the United States exercises mercy, he will remain there until nearly 80 years of age. He has lost his reputation, his pension, his health benefits, even his Social Security, which is stripped from you when you're sent to the federal penitentiary on the grounds that since the federal government is supporting you in the penitentiary, you don't need your Social Security. So he literally, he and his wife, have nothing left but his partial pension. Our belief is that the words of the statute are clear. Our belief is that even if they were ambiguous, you must construe it in his favor, as you've held many times. Our belief is that for 24 years, as a member of the Kankakee County Board, as a legislator and as Lieutenant Governor, George Ryan gave honest and important service to the people of Illinois. He made his pension contributions. He is entitled to his pension for those years, even as he is not entitled, clearly, to his pension. for Secretary of State and Governor. As this court pointed out in Tatio, the public policy behind the forfeiture statute is served with this divisible pension. Far greater payments would have been made for the more highly compensated offices of Secretary of State and Governor. He loses those. So the balance is clear. He is punished, but he is also compensated for his worthy service. Governor, on a purely factual issue, you mentioned the Kankakee County Supervisor position, I believe. Yes.  He would not have gained a pension for his service as a member of the Kankakee County Board by himself. But they concede that he has not forfeited those credits, as I understand it. Well, no, they don't concede that. He was enabled to transfer that service, those six years of service, to his General Assembly Retirement Fund pension. If his entire General Assembly Retirement Fund pension is struck down as they want, then he loses that six years as well because it doesn't stand independently. And they're not sufficient by themselves to qualify Governor Ryan for a pension. That is correct. He would have nothing. It's also important to note, as Justice Carmier questioned, that if you look at the ability of Governor Ryan to transfer those six years into the General Assembly Pension Fund, it does speak to the fact that the legislature would not have intended to strip the governor of credit for service, which did not relate to a crime committed while in office. So we ask this Court to follow the principles of TATIA, which you decided just four years ago unanimously, except for a special concurrence by Justices Freeman and Kilbride, and affirm the ruling of the appellate court below. And if I may say something personal, it is 50 years ago to the day when I won my first case in this Court, November 18th, 1959. And 50 years and one week ago today that I made my first argument in this Court, little has changed except the faces. And no matter what other offices I've held, whether across the street or down the street or in the city of Chicago, I've always regarded this Court as my home. And it's a privilege each time I come here to argue, and I hope I've, in that respect at least, served the Court well. Thank you. Your Honors, I think it's important to talk about the TATIA decision and how that is distinct. The underlying decision in that case was the explicit language of the IMRF, which creates separate divisions of employers. And I've gone over that before, but this case is not the same as TATIA. This is a case where there are no divisions. Nothing in this provision talks about dividing these offices in any way in terms of contributions, benefits, responsibilities of the state at all. There is nothing. So the TATIA decision, the Board thought that it could be read together with this decision because of the difference in the statute. And the Wells decision was brought up by Mr. Thompson. And in that case it is more similar to us in that it is more the village. And when he committed a felony in one of the positions, he was stripped of his benefits that accumulated for all of the other positions. The term employer, though, in this case is a little different, isn't it? The state didn't hire the governor. Well, the IMRF uses the word employer and employee because that obviously best describes the members. But I think that the legislature did not choose the word employee in our statute because, I mean, it really isn't, where there are elected offices, it really isn't appropriate. And the word member was used. So there is no distinction there that there was a difference in wording between employee and member. And to take Mr. Ryan's argument a step further, in Wells it was a relatively low-level employee who lost all of his benefits. In this case we have a very high-level officer and he thinks that he should keep part of his pension. But the fallacy of that is that a high-level person, such as all of these offices that make up the system, can do the most harm to the public good. Just because of the positions that they hold. And it would make no sense at all for someone like Mr. Ryan to be able to keep a portion of his pension when someone like Mr. Wells, who was a very low-level employee and couldn't affect all of the citizens of the state through his criminal conduct, should be stripped of all of his benefits. I mean, that simply makes no sense. The felony forfeiture provision, which would apply here, means that he would lose all of his benefits and this is a correct decision. It promotes the policies underlying the felony forfeiture provision. It is consistent with the plain language of the statute. And it makes certain that the citizens of Illinois, whose trust Ryan betrayed, do not have to fund any of his pension. There is nothing in the statute that supports Mr. Ryan's argument or the appellate court's decision. In fact, the language in the statute, and we have offered the court a reasonable interpretation of that language, supports the board's position. The board was correct that this promotes the policies underlying the forfeiture provision. And we would ask this court to uphold the board's decision and reverse the appellate court. Thank you very much. Case number 108184 will be taken under advisement as agenda number 17.